IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEVIS FLORES | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-06-CV-2202-P |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Levis Flores, a Texas prisoner, has filed an application for writ of habeas corpus

pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of aggravated robbery with a deadly weapon and sentenced him

to life imprisonment. His conviction and sentence were affirmed on direct appeal. *Flores v. State*,

No. 05-03-00544-CR (Tex. App.--Dallas, Mar. 16, 2004, pet. ref'd). Petitioner also filed an

application for state post-conviction relief. The application was denied without written order. *Ex*

*parte Flores*, WR-62,566-01 (Tex. Crim. App. Sept. 13, 2006). Petitioner then filed this action in

federal district court.

II.

In multiple grounds for relief, petitioner contends that: (1) the prosecutor exercised his

peremptory challenges in a racially discriminatory manner; (2) the jury charge on punishment was

defective; and (3) he received ineffective assistance of counsel at trial and on appeal.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000).  A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."  *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1523.  A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

B.

Petitioner alleges that the prosecutor used three of her six peremptory strikes to exclude eligible African-Americans from jury service in violation of the equal protection clause of the

Fourteenth Amendment to the United States Constitution and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  At issue are Juror Nos. 5, 17, and 18.  Respondent counters that petitioner's claim with respect to Juror No. 18 is procedurally barred from federal habeas review and that his arguments relating to Juror Nos. 5 and 17 are without merit.

1.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default.  *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992).  Only procedural rules that are firmly established and regularly followed by state courts can prevent habeas review of federal constitutional rights.  *Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426, 72 L. Ed.2d 824 (1982).  One such rule prohibits a prisoner from filing of a second or successive application for state post-conviction relief if the grounds urged therein could have been raised in a prior state writ.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon Supp. 2007).[1]  The procedural bar doctrine also applies to unexhausted claims if the state court would likely dismiss a successive writ under article 11.07.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991) (procedural default occurs

---

[1] The statute provides, in pertinent part:

> (a)   If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1)   the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2)   by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt . . .

TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).

when prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

Although petitioner raised a *Batson* claim in his state writ, he challenged only the peremptory strikes used against Juror Nos. 5 and 17. Petitioner never argued that the prosecutor struck Juror No. 18 for racially discriminatory reasons. *See Ex parte Flores*, WR-62,566-01, Tr. at 34-37. Nor does petitioner offer any explanation to excuse this procedural default. The court finds that a Texas court, presented with this claim in a successive state writ, would likely find it barred under article 11.07. Consequently, petitioner's claim with respect to Juror No. 18 is procedurally barred from federal habeas review. *Coleman*, 111 S.Ct. at 2557 n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 422-23 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1845 (1998).

2.

The Fourteenth Amendment guarantees every defendant in a criminal case equal protection under the law. *Hernandez v. Texas*, 347 U.S. 475, 477, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). This right extends to the jury selection process. *Swain v. Alabama*, 380 U.S. 202, 204, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia*, 100 U.S. 303, 305-08, 10 Otto 303, 25 L.Ed. 664 (1879). Thus, a prosecutor may not use peremptory challenges to exclude potential jurors solely on the basis of their race. *Swain*, 85 S.Ct. at 837-38. Prior to 1986, the use of peremptory strikes against minority jurors was not unconstitutional absent proof of a historical pattern of racial bias. *Id.* at 837-38. The Fifth Circuit explained this burden as follows:

> In order to prevail [on a *Swain* claim], [petitioner] must prove that his prosecutor had a systematic and intentional practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial.

*Evans v. Cabana*, 821 F.2d 1065, 1068 (5th Cir.), *cert. denied*, 108 S.Ct. 5 (1987), *citing Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir. 1983), *cert. denied,* 104 S.Ct. 3548 (1984). Unless a defendant had evidence of purposeful and systematic discrimination, the prosecutor was entitled to a presumption that he used his peremptory strikes in a proper manner. *Swain*, 85 S.Ct. at 837.

The Supreme Court revisited *Swain* two decades later in *Batson*. Recognizing that it is often impossible for a defendant to prove the systematic exclusion of minorities from jury service over an extended period of time, the Court rejected this evidentiary formulation "as inconsistent with standards that have been developed since *Swain* for assessing a prima facie case under the Equal Protection Clause." *Batson*, 106 S.Ct. at 1721.[2] No longer were defendants required to establish a historical pattern of discrimination in the use of peremptory strikes. Under *Batson*, "a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*." *Id.* at 1722 (emphasis in original).

*Batson* articulates a three-part test for proving purposeful discrimination in the exercise of peremptory challenges. First, the defendant must raise an inference that the prosecutor excluded potential jurors on the basis of race. *Id.* at 1723; *United States v. Wallace*, 32 F.3d 921, 925 (5th Cir. 1994). A defendant may satisfy this burden in a variety of ways, such as by showing a pattern of strikes against minority jurors on the venire panel or by statements made by the prosecutor during the voir dire examination. *Batson*, 106 S.Ct. at 1723. If the defendant makes a prima facie showing of the discriminatory use of peremptory challenges, the burden shifts to the prosecution to articulate a race-neutral explanation for each of the challenged strikes. *Id.* at 1723-24; *Wallace*, 32 F.3d at 925. This inquiry focuses on the facial validity of the explanation given by the prosecutor. "Unless

---

[2] The Supreme Court observed that the "crippling burden" imposed by *Swain* rendered the prosecution's use of peremptory challenges "largely immune from constitutional scrutiny." *Batson*, 106 S.Ct. at 1721.

a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (citations omitted); *see also United States v. Perkins*, 105 F.3d 976, 978 (5th Cir. 1997). If the prosecution is able to articulate a race-neutral reason for striking minority jurors, the court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson*, 106 S.Ct. at 1724; *Wallace*, 32 F.3d at 925. This final step of the *Batson* analysis involves evaluating "the persuasiveness of the justification" offered by the prosecutor. *See Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006), *quoting Elem*, 115 S.Ct. at 1771. However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*, 126 S.Ct. at 974.

A finding by the state court that the prosecutor exercised his peremptory challenges without any discriminatory intent is accorded great deference because it largely turns on an evaluation of the credibility or demeanor of the attorney who exercised the challenge. *See Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991); *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993). Such a finding is a pure question of fact that will not be disturbed on federal habeas review unless it is "objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1028 (2006), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("*Miller-El I*"). *See also Collins*, 126 S.Ct. at 976 ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Petitioner, a native of El Salvador, was charged with aggravated robbery.  The original venire consisted of 85 prospective jurors.  (SF-III at 50).  Thirty-seven members of the panel were excused by agreement of the parties.  (*Id.* at 148, 151-52).  Nine of the remaining 48 prospective jurors were African-American.  (*Id.* at 154-55).  After the lawyers submitted their strike lists, defense counsel objected that the prosecutor had used four of her six peremptory challenges against African-Americans on the jury panel.  (*Id.* at 154).[3]  In response, the prosecutor offered specific reasons for striking each African-American juror.  With respect to Juror No. 5, the prosecutor explained:

> Juror number 5, it's come to our attention that she has a protective order that had been entered against her.  That caused us some concern.

(*Id.* at 154-155).  A computer print-out showing the entry of a protective order against this juror was introduced into evidence without objection.  (*Id.* at 156; *see also* St. Exh. A).  As grounds for striking Juror No. 17, the prosecutor stated:

> With respect to juror seventeen, we believe that that juror expressed a bias against the police officers in response to her questions about having had friends or family or herself having been convicted or dealt within the criminal system.  Felt that that person was not treated fairly.

(*Id.* at 155).  Defense counsel offered no evidence or argument to rebut the prosecutor's race-neutral explanations for striking these jurors.  (*Id.* at 156).  As a result, the trial judge found that none of the African-American jurors were struck for racially discriminatory reasons.  (*Id.* at 157).  The state habeas court reached the same conclusion, noting that the explanations given by the prosecutor for striking Juror Nos. 5 and 17 were "unrefuted."  *Ex parte Flores*, WR-62,566-01, Supp. Tr. at 6, ¶¶ 5-6.

---

[3]  In addition to the peremptory strikes challenged by petitioner in his federal writ, the prosecutor struck Juror No. 42, who also was African-American.  (*See* SF-III at 154).

Like most claims involving discriminatory jury selection practices, the critical issue in this case is whether the prosecutor's proffered race-neutral reasons for striking Juror Nos. 5 and 17 can be believed. The ultimate conclusion of discriminatory intent is a question of fact. *See Ladd v. Cockrell*, 311 F.3d 349, 356 (5th Cir. 2002). As the Fifth Circuit explained:

> We would tend to reverse if the State's reasons were fantastic or inconsistent with its treatment of similar non-minority jurors. Where its reasons are believable, however, the inquiry is one of credibility. Obviously, this question of fact turns heavily on demeanor and other issues not discernible from a cold record, such that deference to the trial court is highly warranted[.]

*Id.* (internal quotations and citations omitted). None of the arguments made by petitioner in his federal writ, all of which were considered and rejected on state collateral review, convince this court that the state court finding on the ultimate issue of discriminatory intent is "objectively unreasonable." With regard to Juror No. 5, petitioner baldly asserts that the protective order referenced by the prosecutor was "bogus." (Pet. Mem. Br. at 16). This allegation is wholly conclusory and cannot support habeas relief. Petitioner also accuses the prosecutor of "bad faith" in referring to Juror No. 5 as a "female," when the computer print-out reflects that the protective order was entered against a "black male." (*Compare* SF-III at 154 *with* St. Exh. A). Even if the prosecutor misstated the sex of Juror No. 5,[4] the existence of a protective order is still a legitimate, race-neutral reason for striking this juror from the panel.

Petitioner challenges the peremptory strike used against Juror No. 17 because she "clearly stated on the record that she could be fair and that her friend's experience with the law would not influence nor affect her judgement[.]" (Pet. Mem. Br. at 16). During voir dire, the prosecutor asked if any member of the jury panel had a friend or close family member who had been arrested for or

---

[4] The court notes that Juror No. 5 was identified by the prosecutor as "Stephanie Williams" and that defense counsel also referred to this juror as "a black female." (SF-III at 154). It therefore is likely that the computer print-out, identifying Stephanie Williams as a "black male," was erroneous.

convicted of an offense. (SF-III at 99, 103). When Juror No. 17 indicated that a friend either had

been arrested or convicted of a criminal offense, the prosecutor asked:

> Q. [BY PROSECUTOR]: Did you think that your friend was treated fairly?
>
> A. No.
>
> Q. Was that here in Dallas?
>
> A. Yes.
>
> Q. How long ago was that?
>
> A. Three years ago.
>
> Q. Was the friend actually convicted of an offense?
>
> A. Yes.
>
> Q. I will ask you, do you have any problem with the District Attorney's office because of that? Do you think that perhaps we treated him unfairly?
>
> A Her, no.
>
> Q. Okay. Did that cause a problem with you with perhaps the police force, I mean, who do you think treated this person unfairly?
>
> A. The police.
>
> Q. Do you think then that you might have a problem listening to a police officer's testimony giving them the same–judging their credibility the same as you would any other witness or do you think you might start with a bias against them?
>
> A. No.
>
> Q. Do you think that would affect you at all in how you would listen to the evidence in this case?
>
> A. No.

(*Id.* at 103-04). Although the juror said that her friend's experience with law enforcement would not affect the way she judged the credibility of police officers, the juror believed her friend was treated unfairly by the police. Because six of the witnesses who testified for the prosecution were police officers, the court cannot say that the decision to strike Juror No. 17 was racially motivated. *See, e.g.*, *Medellin v. Cockrell,* No. H-01-4078, 2003 WL 25321243 at *14-17 (S.D. Tex. Jun. 25, 2003) (upholding strike of Hispanic juror, who claimed to be impartial, where record showed that his view of death penalty was unclear); *Hastings v. Cambra*, No. C 98-1128 CAL (PR), 2000 WL 307473 at *9-10 (N.D. Cal. Mar. 14, 2000) (same as to African-American juror who claimed to be fair despite prior arrests and disrespectful behavior in court); *U.S. v. Briscoe,* 896 F.2d 1476, 1488 (7th Cir.), *cert. denied*, 111 S.Ct. 173 (1990) (same as to African-American juror who claimed to be impartial despite past employment as supervisor of a youth penal facility). This ground for relief should be overruled.

## C.

In two related grounds, petitioner contends that the jury charge on punishment was fundamentally defective for failing to include certain instructions with respect to evidence of extraneous offenses. The omitted instructions include: (1) the effect of accomplice-witness testimony; (2) the presumption of innocence; (3) the law of parties; and (4) the requirement of criminal responsibility.

## 1.

An improper jury instruction rarely justifies federal habeas relief. *Mayabb v. Johnson*, 168 F.3d 863, 867 (5th Cir.), *cert. denied*, 120 S.Ct. 409 (1999), *citing Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). A petitioner must show that the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process. *Id.*

Even if a jury charge is constitutionally defective, a federal habeas court may not grant relief unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 868, *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993); *see also Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir.), *cert. denied*, 117 S.Ct. 150 (1996).

2.

At the punishment hearing, the state introduced evidence of three extraneous offenses allegedly committed by petitioner over an eight-month period. The first offense involved the unprovoked beating of a group of students with baseball bats and metal pipes. Rick Rodriguez, an Arlington, Virginia police detective, testified that petitioner participated in the beating along with other members of the Mara Salvatrucha, or "MS 13," gang. (SF-V at 64, 72). The second extraneous offense involved the robbery of Jose Martinez, a convenience store owner. Petitioner allegedly held a gun to Martinez while two accomplices stole the victim's wallet and looted the cash register. After the accomplices left the store, petitioner struck Martinez in the head with a gun, rendering him unconscious. (SF-VI at 51-53). The third offense was the robbery and murder of Javier Calzada. Ninfa Perez, a fellow MS 13 gang member, testified that she helped petitioner and his girlfriend, Brenda Paz, lure Calzada to a secluded area so they could rob him. (SF-V at 82, 85-87, 90). As the trio neared their destination with the victim, petitioner pulled a gun, forced Calzada out of the car, and accompanied him into the woods. (*Id.* at 91). Perez then heard an unidentified noise, causing her to believe that Calzada had been killed. (*Id.* at 93). Petitioner emerged from the woods without Calzada and drove away with Paz and Perez. (*Id.*). Later that month, Calzada's skeletal remains were discovered in the woods. (*Id.* at 109). An autopsy revealed that the cause of death was a gunshot wound to the head from very close range. (*Id.* at 129, 131-33).

The trial court instructed the jury that:

> You are instructed that if there is any evidence before you in this case regarding the defendant having committed offenses or bad acts other than the offense for which he is now on trial you may not consider such evidence unless you find and believe beyond a reasonable doubt that the defendant committed such offenses or bad acts, if any.

> The burden is upon the prosecution to prove such extraneous offenses or bad acts beyond a reasonable doubt.

> Therefore, if you find and believe beyond a reasonable doubt that the defendant committed extraneous offenses or bad acts, then you may consider such evidence in assessing the defendant's punishment. If you do not so find, or you have a reasonable doubt as to whether the defendant committed extraneous offenses or bad acts, then you may not consider such evidence, if any, in assessing punishment.

(St. App. Tr. at 43). Although defense counsel requested a jury instruction on accomplice-witness testimony, the request was denied. (SF-VI at 77-78).

3.

The court initially observes that petitioner was not entitled to an accomplice-witness instruction. "The testimony of a witness without complicity in the offense for which an accused is on trial is not that of an accomplice-witness, regardless of his complicity with the accused in other offenses." *Gibbons v. Cockrell*, No. 4-02-CV-0960, 2003 WL 21754951 (N.D. Tex. Jul. 29, 2003), *COA denied,* 03-10965 (5th Cir. May 4, 2004), *citing Gamez v. State,* 737 S.W. 315, 322 (Tex. Crim. App. 1987). Thus, the accomplice-witness rule is "inapplicable to extraneous offenses presented during the punishment phase." *Solomon v. State,* 49 S.W.3d 356, 363 n. 16 (Tex. Crim. App. 2001). Ninfa Perez was not an accomplice to the aggravated robbery alleged in the indictment. Consequently, an accomplice-witness instruction was not required.

Nor was the jury charge on punishment constitutionally deficient for failing to include an instruction on the presumption of innocence. The presumption of innocence operates at the guilt-

innocence phase of a trial "to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt." *Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 1225, 122 L.Ed.2d 620 (1993), *citing Taylor v. Kentucky*, 436 U.S. 478, 484 n.12, 98 S.Ct. 1930, 1934 n.12, 56 L.Ed.2d 468 (1978). Even if the presumption extends to extraneous offenses introduced into evidence at the punishment phase of a trial, petitioner would not have been entitled to a presumption of innocence instruction in this case. Such an instruction is constitutionally required "only if the circumstances created a genuine risk that the jury would conclude, *from factors other than the State's evidence*, that the defendant had committed other crimes." *Id.*, 113 S.Ct. at 1226 (emphasis added). Petitioner does not cite to any such circumstances in this case. Rather, he argues his entitlement to a presumption of innocence instruction as a matter of right. That is not the law.

Likewise, the trial court was not required to instruct the jury on the law of parties or the requirement of criminal responsibility. Under Texas law, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (Vernon 1994). Moreover, a jury may consider evidence at the punishment phase of a trial of "an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant *or* for which he could be held criminally responsible." TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon 2006) (emphasis added). The state did not rely on the law of parties to prove that petitioner committed any of the extraneous offenses offered into evidence at the punishment hearing. Instead, the state attempted to prove that petitioner committed each offense by his own conduct. The jury was instructed not to consider evidence of other offenses or bad acts unless "you find and believe beyond a reasonable doubt that the defendant committed such offenses

or bad acts." (St. App. Tr. at 43). In light of the evidence and the reasonable doubt instruction given by the trial court, the court is unable to conclude that the omission of instructions on the law of parties and the requirement of criminal responsibility had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 113 S.Ct. at 1722. These grounds for relief should be overruled.

## D.

Petitioner contends that his representation at trial was constitutionally deficient in numerous respects. All of his claims relate, either directly or indirectly, to the punishment hearing. In particular, petitioner criticizes his attorney for: (1) failing to voir dire the jury panel on the accomplice-witness rule; (2) not objecting to the erroneous jury charge; (3) allowing petitioner to be tried jointly with a co-defendant; (4) failing to object to victim impact testimony regarding the Calzada murder; (5) not impeaching Ninfa Perez or objecting when the prosecutor portrayed Perez as a victim; and (6) bolstering the state's case by acknowledging evidence of petitioner's prior bad acts and gang affiliation.

## 1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must establish prejudice. *See id.* at 2067. Where ineffective assistance of counsel is alleged during the punishment phase of a non-

capital case, the petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney.[5] *Daniel v. Cockrell*, 283 F.3d 697, 706 (5th Cir.), *cert. denied*, 123 S.Ct. 286 (2002), *citing Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). In making this determination, the court must consider: (1) the sentence imposed in the case; (2) the minimum and maximum sentence allowed by law; (3) the placement of the sentence within the allowable range; and (4) any mitigating or aggravating factors considered by the trier of fact. *Spriggs*, 993 F.2d at 88-89.

2.

Two of petitioner's ineffective assistance of counsel claims are patently frivolous. As previously discussed, the accomplice-witness rule is not applicable to extraneous offense evidence presented during the punishment phase of a trial. Nor was the jury charge on punishment defective for failing to include instructions on the presumption of innocence, the law of parties, or the requirement of criminal responsibility. These grounds for relief should be summarily overruled.

3.

Petitioner complains that his attorney allowed him to be tried jointly with a co-defendant, Juan Guzman, thereby allowing Guzman's lawyer to bolster the state's case against petitioner by emphasizing the significance of tattoos on his forehead. At trial, the robbery victim, Juan Velasquez, testified that he and his wife were robbed in a parking lot by four men on Christmas Day

---

[5] In *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines. *Id.* at 438. *See also Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance"). However, the court noted an important distinction between the federal guidelines and state sentencing regimes. Because state sentencing tends to be more discretionary than the more predictable federal system, "practically any error committed by counsel could [result] in a harsher sentence." *Grammas*, 376 F.3d at 438 n.4, *quoting Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Therefore, the court limited its adoption of the "any amount of jail time" test to cases involving the federal guidelines. *Id. See also Doria v. Dretke*, No. A-03-CA-693-LY, 2006 WL 1348386 at *11 n.5 (W.D. Tex. May 4, 2006); *Wadhwa v. Dretke*, No. 3-04-CV-1687-G, 2005 WL 1521846 at *2 n.1 (N.D. Tex. Jun. 27, 2005) (Kaplan, J.), *rec. adopted as modified*, 2005 WL 1679440 (N.D. Tex. Jul. 18, 2005).

2001.  (SF-IV at 22, 25).  One of the men, whom Velasquez identified as Guzman, held a gun to his

head and demanded money.  (*Id.* at 26-28).  Another man, whom Velasquez described as tall and

slim with tattoos on his forehead, searched Velasquez and his wife and took their valuables.  (*Id.* at

26, 28-32).  Velasquez later identified the tattooed accomplice as petitioner.  (*Id.* at 35-37).  During

the punishment hearing, Detective Rick Rodriguez testified that petitioner was a member of the "MS

13" gang and that the tattoos on his forehead signified that he had either killed a rival gang member

or assaulted a police officer.  (SF-V at 75).  Guzman's attorney emphasized the fact that his client

did not have any tattoos in asking the jury for leniency:

> We heard from Detective Rodriguez that being in MS does not
> make–is not a life sentence.  You can be saved from MS.  Obviously,
> my client is a young man.  Obviously, he has not been raised to the
> level of tattoos on the forehead or on the neck or on the legs, so I
> think that it is a reasonable deduction from the evidence that he is
> salvageable.

(SF-VI at 89).  Petitioner maintains that this argument caused the jury to punish him more harshly.

Texas law authorizes the joint trial of two or more defendants "who are jointly or separately

indicted or complained against for the same offense or any offense growing out of the same

transaction[.]"  *See* TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2003).  The only exceptions are

in cases where "either defendant may testify for the other or on behalf of the state," or when "it is

made known to the court that there is a previous admissible conviction against one defendant or that

a joint trial would be prejudicial to any defendant[.]"  *Id.*  Here, petitioner relies on the "prejudice"

exception to support his entitlement to a separate trial.  In rejecting this claim on state collateral

review, the trial court found that:

> testimony regarding the significance of a tattoo on Applicant's
> forehead was already of record and could have been argued in a
> separate trial.  Co-counsel's statement were [sic] cumulative of the
> other argument and evidence.  The Applicant has shown no prejudice
> from this argument.

*Ex parte Flores*, WR-62,566-01, Supp. Tr. at 8 ¶ 12. That finding was made by the same judge who presided over petitioner's trial and who would have ruled on any motion for severance. Not only has petitioner failed to rebut this finding by clear and convincing evidence, he has not shown that his punishment would have been "significantly less harsh" had he and Guzman been tried separately. This ground for relief should be overruled.

4.

Next, petitioner contends that his attorney was ineffective for failing to object to victim impact testimony regarding the Calzada murder. In his testimony at the punishment hearing, Luis Calzada, the brother of the murder victim, described Javier Calzada as "a wonderful person, he is [caring]." (SF-VI at 45). Luis told the jury that Javier was 21 years old and worked as a porter at a car dealership. (*Id.* at 46). The prosecutor then asked Luis to identify a photograph of Javier taken at his high school graduation. (*Id.* at 47 & St. Exh. 23). Defense counsel did not object to this testimony or cross-examine the witness.

Contrary to petitioner's argument, the prosecutor did not elicit victim impact testimony from Luis Calzada. Under Texas law, victim impact evidence is "evidence of the effect of an offense on people *other* than the victim." *Roberts v. State,* 220 S.W.3d 521, 531 (Tex. Crim. App. 2007) (emphasis in original). Luis Calzada never testified as to the effect of his brother's murder on himself or anyone else. His description of Javier was a "wonderful" and "caring" person was not victim impact evidence.

In a related argument, petitioner criticizes defense counsel for failing to adduce evidence showing that Javier Calzada was a gang member. The state habeas court found that:

> The evidence at trial clearly establishes that the victim was executed
> in a cold blooded fashion. His membership in a gang in no way
> mitigates the senselessness and ruthlessness of the offense. This

> Court finds that Applicant has failed to sustain his burden of proof
> with regard to Applicant's allegations.

*Ex parte Flores*, WR-62,566-01, Supp. Tr. at 8-9 ¶ 17.  It is ludicrous for petitioner to suggest that his life sentence for aggravated robbery with a deadly weapon would have been mitigated had the jury been told that the victim of a prior murder, who was shot in the head at close range by petitioner after being lured into the woods, was affiliated with a gang.  These grounds for relief should be overruled.

### 5.

Petitioner contends that his attorney should have impeached Ninfa Perez, who testified about the Calzada murder, with evidence that she received immunity or leniency in exchange for her testimony.  As evidence of this immunity agreement, petitioner relies on a letter from Gregory T. Hunter, an attorney in Arlington, Virginia, to Dallas County prosecutors and law enforcement officials.  The letter references an unidentified client, described only as a "female in a Hispanic gang," who witnessed the Calzada murder.  *Ex parte Flores*, WR-62,566-01, Tr. at 54-56.  Although Hunter sought immunity for his client, there is no evidence that the client was Perez.  To the contrary, ample evidence in the record suggests that Hunter's client was Brenda Paz.  In his letter, Hunter stated that petitioner admitted to his client "in bed that evening" that he killed Calzada.  *Id.*, Tr. at 56.  At trial, Perez testified that Paz and petitioner were involved in a romantic relationship.  (SF-V at 85).  Moreover, in an affidavit submitted to the state habeas court, Paz acknowledged that Greg Hunter was her lawyer.  *Ex parte Flores*, WR-62,566-01, Tr. at 58.  Based on this evidence, the state habeas court found that "the letter pertains to a witness [to the Calzada murder] *who did not testify at trial*."  *Id.*, Supp. Tr. at 9 ¶ 15 (emphasis added).  Petitioner offers no evidence to rebut that finding.  The court therefore concludes, as did the state habeas court, that counsel was not

ineffective for failing to impeach Perez with evidence of a non-existent agreement for immunity or leniency.

Petitioner also faults his attorney for failing to object when prosecutor portrayed Perez as a victim during his closing argument. In his final summation to the jury, defense counsel argued:

> I have got a limited amount of time to talk to you and during the period of time I have to talk to you I want to spend most of my time talking to you about the testimony of Ninfa Perez, and about this alleged murder of a man by the name of . . . Javier Calzada. Now, what do you know about that offense? It's kind of the centerpiece of the State's case on punishment. And, they brought you one witness who has testified that these men on trial participated in the murder of [Calzada]. One sixteen year old girl, she testified who is a gang member herself, who came and testified. Now, she told you facts, that if you believe those facts, could lead to you believing that these men did participate in that murder, but I want to ask you this question, what right do you have and why would you want to believe that woman?

(SF-VI at 82-83). Counsel proceeded to argue that Perez was not credible because she did not report the crime immediately after it occurred and lied to the detective who questioned her about the murder. (*Id.* at 83-85). Because of "the hesitation and the indecision and the other sorts of things that were in her as she came here and testified," counsel suggested that Perez fabricated petitioner's involvement in the murder in order to avoid prosecution herself. (*Id.* at 85). The prosecutor responded to this argument in his rebuttal:

> What you have is the fact that these two men are destroyers. They destroy life, the life of Javier Calzada. And, for a second, you don't think Ninfa, Ninfa's life is changed forever by what she did in this courtroom? . . . What do you think her fate is going to be? What do you think is going to happen to her? Do you think she will just live a normal life? I don't know, maybe, I sure hope. Do you think for a second that her life is going to be the same, though? Don't you know that she would have given anything not to have been there . . . I think you can believe what she had to tell you and I think you do believe what she had to tell you . . . A young man destroyed, a young life destroyed, family devastated.

(SF-VI at 92-94). Although the prosecutor portrayed Perez as a sympathetic young woman whose life was ruined by petitioner, he was merely responding to the argument made by defense counsel that Perez was a hardened gang member who lied to avoid prosecution. This was proper jury argument under Texas law. *See Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1998). In addition, as found by the state habeas court, "there is little possibility that the isolated statement regarding [Perez] would have had any impact on the jury's punishment verdict." *Ex parte Flores*, WR-62,566-01, Supp. Tr. at 10 ¶ 18. These grounds for relief should be overruled.

6.

Nor did defense counsel bolster the state's case by acknowledging evidence of petitioner's prior bad acts and gang affiliation. During his closing argument, counsel told the jury:

> Certain evidence has been presented in front of you of bad acts on the part of the Defendants. Now, you can only consider that evidence under certain limited conditions. And, the Judge sets out what those limited conditions are. You cannot consider that evidence against the Defendants unless you believe, beyond a reasonable doubt, that they did exactly what they said they did.

(SF-VI at 81-82). It is clear from the context of this argument that counsel merely reminded the jury of the appropriate evidentiary standard applicable to extraneous offenses. In light of the evidence linking petitioner to three prior offenses--a brutal beating, an aggravated robbery, and a murder--it was sound trial strategy for defense counsel to tell the jury that the state was required to prove beyond a reasonable doubt that petitioner had committed each of those offenses. Certainly, petitioner was not prejudiced by such an argument.

E.

Finally, petitioner contends that he received ineffective assistance of counsel on appeal. According to petitioner, counsel should have appealed his conviction on the grounds that: (1) the prosecutor exercised his peremptory challenges in a racially discriminatory manner; (2) the jury

charge on punishment was defective for failing to include instructions on the accomplice-witness rule, the presumption of innocence, the law of parties, and the requirement of criminal responsibility; and (3) he received ineffective assistance of counsel at trial. Both the state habeas court and this court have rejected each of the claims petitioner contends his lawyer should have raised on direct appeal. There is no reason to believe that the outcome would have been any different had those claims been raised in a different forum. *See Casillas v. Quarterman*, No. 3-06-CV-1894-M, 2007 WL 1346665 at *5 (N.D. Tex. May 8, 2007) (Kaplan, J.), *COA denied*, No. 07-10573 (5th Cir. Jan. 7, 2008) (appellate counsel was not ineffective for failing to raise the same claims on direct appeal that were rejected on federal habeas review).

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 30, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE